UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CURTIS A. LONG,

     Plaintiff,

v.                              Case No. 5:18cv72-TKW-HTC

DOCTOR S. HOSSEINI,
NURSE JONES,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' respective motions to dismiss (ECF Docs. 37, 38). Plaintiff Curtis A. Long, proceeding *pro se* and *in forma pauperis*, files this action under 42 U.S.C. § 1983 alleging Defendants Dr. Hosseini and Nurse Jones violated his Eighth Amendment rights by failing to provide him with adequate medical treatment for pain and other symptoms relating to a hip implant. ECF Doc. 20. Defendants seek dismissal on the grounds of (1) failure to exhaust; (2) no deliberate indifference; and (3) qualified immunity. For the reasons set forth below, the undersigned recommends the motions to dismiss be DENIED.

## I.    Factual Background[1]

Long had hip surgery on October 1, 2015 at Orlando Regional Medical Center and received four metal implants.  He was advised he should receive follow-up examination and that "if he was experiencing any pain, discomfort or problems with the hip replacement, he should seek medical attention from his assigned prison institution."  *Id.* at ¶ V.3.  When he arrived at Apalachee Correctional Institution (Apalachee CI), Long was seen by the medical staff on March 5, 2016.  He was "placed on Nuproxene[2] for (1) one month and informed that he would be placed on the call-out to see the [doctor]."  ECF Doc. 47 at 10.

In early 2017, Long complained about pain he believed was associated with the hip implant.[3]  Long alleges he was "experiencing severe pain in his left hip that extended to his back, legs and knees.  The pain made it difficult and extremely painful to walk or stand on his feet for any length of time."  EC Doc. 20 at ¶ V.5.  Long believed the pain he was experiencing was because the implant was defective.  He developed this belief after seeing commercials about recalls on hip implants.

On February 14, 2017, Long was seen by Dr. Hosseini who told him "nothing was wrong with him" and placed him on "Nuproxene" for thirty (30) days.  ECF

---

[1] Since this matter is before the Court on a motion to dismiss, the following facts are taken from Plaintiff's sworn amended complaint and are accepted, for purposes of this motion only, to be true. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678-79 (2009).
[2] From context, the Court assumes that Long meant "Naproxen" here, which is a non-narcotic pain reliever and the active ingredient in Aleve.
[3] There are no allegations regarding whether Long saw a doctor after arriving at Apalachee CI until early 2017, which is when Long first alleges he was experiencing pain.

Doc. 47 at 10.  On March 12 and 26, 2017, Long sent inmate requests to Dr. Hosseini asking him for an update on the make and model of his hip implant equipment.  On March 28, 2017, medical staff at Apalachee CI responded to an inmate request from Long and wrote that Dr. Hosseini had requested medical records from the Orlando Regional Medical Center on February 14, 2017, but they had not yet arrived.

By May 1, 2017, Long had not been contacted by Dr. Hosseini about the records or the implants, so he filed another inmate request.  On May 10, the medical department responded, telling Long he could get his own medical records (even though the medical department subsequently informed him on May 23 that they had received his medical records a month earlier, on April 4).  On May 18, 2017, Long wrote "his first informal grievance" complaining that, despite being seen three months earlier and promised a follow-up for hip pain and suffering, all he had received was the response to "get his medical records on his own."  ECF Doc. 20 at ¶ V.8.

On May 27, Long sent an informal grievance to medical stating his "hip replacement may well be a life or death situation if it is faulty and I have been refused any form of help pertaining to my issue.  Please place me to see Dr. Hosseini."  *Id.* at ¶ V.9.  The medical department responded on May 31 that Long "may consider the sick call system."  *Id.* at ¶ V.10.

On June 5, 2017, Long filed a formal grievance with the Warden.  The Warden and Dr. Hosseini issued a response on June 15.  They denied the formal grievance,

finding that Long had been seen by a clinician and that he could use the sick call system.  Long appealed to the Secretary on June 22 but received no response.  He continued to file grievances, and the medical department and Warden continued to find that he had been given medical treatment and that he should use the sick call system if he wanted additional action.  In his July 12, 2017 grievance, he complained of "severe and significant symptoms including but not limited to present and ongoing severe pains in my back, hip, leg, knee and foot that cause pain and major discomfort, trouble sleeping at night, burning sensations, sharp stabbing pains, discomfort walking, sitting or standing for long periods of time, inability to recreate, exercise, numbness at times and mental agony, stress and depression due to the pain and constant worry."  *Id.* at ¶ V.14.

Eventually, during sick call on August 25, 2017, Dr. Hosseini and Nurse Jones examined him and prescribed NSAID pain relievers (Aleve and Ibuprofen) but did not refer him to an orthopedic specialist or to the original doctor who conducted the implant surgery, as Long had requested.  Long also complains that Dr. Hosseini "refused to issue Long a medical pass for [orthopedic] shoes, a hernia cushion and a double mattress to help the Plaintiff sleep at night."  *Id.* at ¶ V.19.  Instead, Dr. Hosseini told Long he had no options except to deal with the pain.  *Id.*

## II.    Legal Standard

Defendants move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Also, in considering a motion to dismiss for failure to state a claim, the Court reads Plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), and accepts "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts . . . as true." *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004) (citation omitted).

### III. Legal Analysis

In their motions, Defendants argue (1) Long failed to allege a sufficient physical injury under 42 U.S.C. § 1997e(e); (2) Long failed to allege a constitutional violation of deliberate indifference to a serious medical need; and (3) even if Long had alleged a constitutional violation, Defendants are entitled to qualified immunity because Long's allegations do not show Defendants violated clearly established federal law. Additionally, Nurse Jones moves to dismiss on the additional ground that Long failed to his exhaust administrative remedies. Because the two motions

overlap, other than as to the failure to exhaust claim, the undersigned will address that argument first.

### A.   Exhaustion of FDOC administrative remedies as to Nurse Jones

The Prison Litigation Reform Act ("PLRA") requires an inmate challenging prison conditions to first exhaust all available administrative remedies before filing an action under 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1997e(a).  This requirement, while not jurisdictional and does not have to be pled by the Plaintiff, is mandatory. *See Jones v. Brock,* 549 U.S. 199, 216 (2007); *Alexander v. Hawk*, 159 F.3d 1321, 1324-26 (11th Cir. 1998); *Bryant v. Rich*, 530 F.3d 1368, 1374, n. 10 (11th Cir. 2008). Its purpose is to ensure that prison officials have an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  *Jones,* 549 at 204.

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss or be treated as such if raised in a summary judgment motion.   *Bryant*, 530 F.3d at 1374-75 (citation omitted).  To make this determination, the court employs a two-step process.  *See Turner v. Burnside*, 541 F. 3d 1077, 1082 (11th Cir. 2008).  First, the court looks to the factual allegations in the motion to dismiss and those in the prisoner's response and accepts the prisoner's view of the facts as true.  *See id.*  The court should dismiss if the facts as stated by the prisoner show a failure to exhaust.  *Id.*  Second, if

dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082-83.

The crux of Nurse Jones's exhaustion argument is that although Plaintiff filed grievances complaining about Dr. Hosseini's conduct, Plaintiff did not file any grievances as to her conduct. Nurse Jones is correct that "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). Proper exhaustion "means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)." *Id*. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, to determine whether Plaintiff properly exhausted his grievance as to Nurse Jones, the Court must look at the requirements imposed by the Florida Department of Corrections ("FDOC"). *See Dimanche v. Brown*, 783 F.3d 1204, 1207 (11th Cir. 2015); *see also Jones*, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").

The FDOC provides an internal grievance procedure for its inmates, which is codified in the Florida Administrative Code 33-103 through 33-103.018. The grievance procedures generally require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*,

627 F.3d 1215, 1218 (11th Cir. 2010). For complaints regarding medical treatment, an inmate may bypass the informal grievance step (Long did not bypass that stage here). *See* Fla. Admin. Code r. 33-103.005(1).

Regarding the level of specificity required by the FDOC's procedures, as Judge Walker previously noted in *Harvard v. Inch,* -- F. Supp. 3d --, 2019 WL 5587314 (N.D. Fla. Oct. 24, 2019), the only requirement is that the "inmate shall ensure that the form is legible, that included facts are accurately stated, and that only one issue or complaint is addressed." *Harvard,* 2019 WL at * 11. "By its terms, this mandates no level of detail at all, requiring only that whatever facts are stated must be true." *Id.,* citing *Goldsmith v. White*, 357 F.Supp.2d 1336, 1339 (N.D. Fla. 2005). That, of course, does not mean that no detail is necessary. Rather, the grievance must be sufficient to put the agency on notice of the issues in play; otherwise, the agency would not have been afforded an opportunity to resolve the issues prior to suit. *See Parzyck*, 627 F.3d at 1219 ("Section 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . .'") (quoting *Jones*, 549 U.S. at 219); *Harvard,* 2019 WL at *12 ("absent a stringent requirement in FDC's rules, a standard akin to notice pleading is appropriate").

In his amended complaint, Long makes three allegations against Nurse Jones. First, he alleges Jones "was responsible for the complete indifference shown by the medical staff in responding 'use sick call' on his numerous requests." Second, he

alleges Nurse Jones was "negligent for failure to prescribe Long even non-narcotic pain medication (Naproxen or Ibuprofen) to deal with his symptoms because she had the decision-making authority for issuing these drugs." ECF Doc. 20 at 7-8. Third, he alleges she was negligent for failing to schedule him an appointment with the doctor.

In Plaintiff's grievances, he frequently refers to "medical staff." He complains that "medical staff" denied him access to health care (ECF Doc. 38-1 at 3); asks for administrative relief against "medical office and staff" (*id.* at 4); complains he was "denied remedy and treatment from several medical staff" (*id.* at 8); alleges he "repeatedly sought assistance from the medical providers here" (*id.* at 9); complains of "medical denying me medical treatment and remedies" (*id.* at 15), and alleges he "wrote several requests, grievances to medical . . . and was denied remedy and treatment from several medical staff" (*id.* at 19).

Long's grievances are sufficient to put the FDOC on notice of Plaintiff's claims. Long's complaints about being denied access to health care by medical staff was sufficient to put the FDOC on notice that Long took issue with the response he was receiving from Nurse Long, which he claims amounted to "use sick call," and a failure to schedule him an appointment or provide him with pain medication. The grievances are sufficient even if Long does not identify Nurse Jones by name. *See Cronin v. Jones*, 2019 WL 144915, at *6 (M. D. Fla. Jan. 9, 2019) ("To the extent Plaintiff failed to identify Dr. Campbell in his grievances, his failure to do so is not

fatal to his claim because the Florida grievance procedure does not require that a prisoner identify each person he intends to later sue.") (citing Fla. Admin. Code r. 33-103.005 through 33-103.007).

Nurse Jones argues the grievances are insufficient as to her because there are no grievances after July 25, 2017, or relating to events occurring after July 25, 2017, regarding medical treatment.   July 25 is the date Plaintiff states in his complaint that Nurse Jones responded to "sick call."   ECF Docs. 38 at 6; 20 at 7.   Defendant's reading of Plaintiff's amended complaint, however, is too narrow, particularly at a motion to dismiss stage.   Although Plaintiff does say in his amended complaint that "on July 25, Nurse Jones (RN) responded 'access sick call,'" he also alleges in that same paragraph that Nurse Jones told him to "use sick call" on "numerous requests" when he asked her for help and that "she signed the requests as 'receiver' and 'triaged by.'"   Reading Plaintiff's amended complaint liberally and viewing the allegations in his favor, as the Court is required to do at this stage, it is arguable that Plaintiff's claims against Nurse Jones arises out of more than just one response on July 25, 2017.

Finally, Nurse Jones's reliance on *Brown v. Sikes*, 212 F.3d 1205 (11th Cir. 2000), is misplaced.   *Brown* predates *Jones v. Bock*, *supra.*   In *Jones*, the Supreme Court "clarified that the PLRA does not mandate 'a name all defendants requirement,' thus limiting the *Brown* court's holding." *Cronin*, 2019 WL at *5 (quoting *Jones*, 549 U.S. at 217).   Instead "[t]he level of detail necessary in a

grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.  As discussed above, the FDOC's procedures do not include a "name all defendants requirement."

Accordingly, although the facts may ultimately limit Nurse Jones's involvement in these claims, the burden of proof is on Defendant to show Long failed to exhaust his remedies, and the undersigned does not find that Defendant has met that burden here.  *See Whatley v. Smith*, 898 F.3d 1072 (11th Cir. 2018).

## B.    Requirement under 42 U.S.C. § 1997e(e) of more than a *de minimis* physical injury

It is well settled in the Eleventh Circuit that an incarcerated individual cannot recover compensatory or punitive damages for a constitutional violation unless he can demonstrate a more than *de minimis* physical injury.  *See Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (collecting cases construing § 1997e(e) of the PLRA).  Where the physical injury is *de minimis* or, in some circumstances, where there is no physical injury, the plaintiff can only recover nominal damages.  *Id*. Although the Eleventh Circuit has not adopted a definition of "*de minimis*," the court has acknowledged an injury is more than *de minimis* if it is "an observable or diagnosable medical condition requiring treatment by a medical care professional". *Thompson v. Sec'y, Fla. Dep't of Corrections*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014).

In his first amended complaint, Long seeks "monetary damages for pain and suffering in an amount deemed just and fair by this Court." ECF Doc. 20 at 10. Defendants argue that Long does not allege the requisite physical injury to support a claim for compensatory and punitive damages. Therefore, according to Defendants, Long fails to satisfy the § 1997e(e) physical injury requirement and is "precluded from proceeding with this action" against the Defendants. ECF Doc. 38 at 18 & ECF Doc. 37 at 11.

As an initial matter, however, a failure to establish a more-than-*de-minimis* injury does not prevent Long from proceeding in his action. It would simply mean he is barred from seeking compensatory or punitive damages; Long would still have a cause of action for a recovery of nominal damages. The Eleventh Circuit in *Brooks v Warden,* 800 F.3d 1295 (11th Cir. 2015) stated, "[W]e hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury." *Brooks*, 800 F.3d at 1307–08. Additionally, Plaintiff's request for an amount "deemed just and fair by this Court" is broad enough to include nominal damages. Indeed, the courts have liberally construed a complaint to include a request for nominal damages based on language in the complaint requesting some sort of additional relief ("such other relief as may appear that plaintiff is entitled," or "any other relief the court deems appropriate or just" or similar language). *See Boxer X v. Donald*, 169 F. App'x 555, 559 (11th Cir. 2006); *Smith v. Barrow*, No. CV 311-044, 2012 WL 6519541, at *5 (S.D. Ga. Nov.

9, 2012), *report and recommendation adopted as modified by*, 2012 WL 6522020 (S.D. Ga. Dec. 13, 2012).

Regardless, Plaintiff alleges more than a *de minimis* injury. Long alleges he suffered "severe pain in his left hip that extended to his back, legs and knees. The pain made it difficult and extremely painful to walk or stand on his feet for any length of time." ECF Doc. 20 at ¶ V.5. He also alleges a specific and plausible cause for the pain, a hip implant he received a few years previously. *Id.* at ¶¶ V.2-3. Long sought medical treatment for the pain and was given Naproxen pain relievers. He also alleges he informed Defendants the hip implant may have been recalled and might be causing toxins to leach into his blood or metal parts to break off and injure him. He alleges he told medical staff in a grievance that "[m]y hip replacement may well be a life or death situation if it is faulty and I have been refused any form of help pertaining to my issue." *Id.* at ¶ V.9.

Allegations, such as Long's, are sufficient to overcome a motion to dismiss. *See, e.g., Merritt v. Godfrey*, No. 3:13cv607/LAC/EMT, 2015 WL 5439306, at *8 (N.D. Fla. Aug. 10, 2015) (concluding, at motion to dismiss stage, that plaintiff's allegations of back pain while sitting or standing, which persisted and worsened during the year and a half between the use of force and the filing of the complaint, were sufficient to survive dismissal), *report and recommendation adopted by* 2015 WL 5440570 (N.D. Fla. Sept. 19, 2015); *Goodwin v. Hatten*, No. 1:07cv123–MMP/AK, 2010 WL 750290, *5 (N.D. Fla. Mar. 1, 2010) (concluding, at summary

judgment stage, that plaintiff presented sufficient evidence to demonstrate a genuine issue of material fact as to whether his injuries were more than *de minimis* where plaintiff alleged he suffered "unbearable" pain in his ribs and was unable to breathe deeply, medical staff prescribed ibuprofen for pain and ordered diagnostic testing, and medical staff observed bruising and swelling that lasted no more than one week).

Additionally, Long's allegations of constant, severe pain with a plausible, specific cause is unlike the cases relied upon by Defendants. In *Quinlan v. Pers. Transp. Servs. Co.*, 329 F. App'x 246 (11th Cir. 2009), plaintiff's complaints of chest pain, headache, difficulty breathing, and back pain were temporary and periodic and did not require immediate medical attention. *Quinlan*, 329 F. App'x at 249. In *Mann v. McNeil*, 360 F. App'x 31 (11th Cir. 2010), plaintiff's complaints were of vague injuries to his back, and scrapes and marks on his knees and legs. *Mann*, 360 F. App'x at 32.

This case is also unlike *Merritt v. Stewart*, 2016 WL 1055247 (N.D. Fla. 2016), which was decided on summary judgment. Indeed, in Magistrate Judge Timothy's Report and Recommendation, she specifically noted that Plaintiff's allegations "were sufficient to raise a reasonable inference that Defendants' conduct and/or Merritt's injury were more than *de minimis*, which was all that was required at the Rule 12(b)(6) stage, and that further factual development was needed on the issue." *Merritt*, 2016 WL at *5. Similarly, *Hill v. Bryant*, 2017 WL 3585429 (N.D. Fla. 2017) was also decided on summary judgment, after Magistrate Judge Jones

reviewed and considered the evidence, including video evidence, of Plaintiff's alleged injuries. *Hill*, 2017 WL at *7.

Moreover, one of Long's key allegations is that further harm might be occurring in his body that he does not know about because prison medical staff refuse to allow him to be further examined. Plaintiff should be given the opportunity to develop evidence supporting this possibility. *See Curry v. Johnson,* No. 3:16CV483/MCR/EMT, 2017 WL 6568956, at *5 (N.D. Fla. Nov. 22, 2017) ("Further factual development is needed to determine whether Curry's physical injury was more than *de minimis*. . . . Therefore, Officer Johnson's motion to dismiss Curry's individual capacity claim for punitive damages should be denied at this stage of the case."), *report and recommendation adopted,* No. 3:16CV483/MCR/EMT, 2017 WL 6567812 (N.D. Fla. Dec. 22, 2017).

C.  <u>**Long's allegations, if believed, suffice to show a constitutional violation of deliberate indifference to a serious medical need by both Jones and Hosseini**</u>

As set forth above, the crux of Long's allegations against Defendants are that they were deliberately indifferent in ignoring his requests for pain medication and to go see an outside doctor for the severe pain he was experiencing from his hip implants. A prison official violates the Eighth Amendment when the official acts with deliberate indifference to an inmate's serious medical needs, giving rise to a cause of action under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To prevail on a deliberate indifference claim, a plaintiff must show that he had an

objectively serious medical need and that the defendant acted with deliberate indifference to that need. *See Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

### 1.    Serious medical need

The Eleventh Circuit has defined a "serious medical need as one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Id.* Defendants argue Plaintiff has failed to allege he suffers a serious medical need. They argue Plaintiff has not confirmed, and does not allege, that his hip implant is actually defective or faulty. However, Defendants' argument ignores Plaintiff's allegations of "severe pain" in his back, legs and knees, making it extremely painful to walk or stand on his feet for any length of time.

The Eleventh Circuit has held that "prison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain." *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (reversing district court's granting of summary judgment in favor of defendants and concluding that defendants "were deliberately indifferent to [plaintiff]'s medical need for further diagnoses of and treatment for the severe pain he was experiencing"); *see, e.g., Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (finding "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim"). Moreover, this is not a situation where Plaintiff's allegations of pain have no viable

source.  To the contrary, Plaintiff alleges the pain was caused by a specific and plausible reason, a hip implant he received a few years previously.

### 2.    Deliberate indifference

The second element requires a showing of deliberate indifference to the serious medical need.  To establish deliberate indifference, a plaintiff must show that the defendant had: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Burnett v. Taylor*, 533 F.3d at 1330 (citation and internal quotation marks omitted).  No liability arises under the Constitution for an official's failure to alleviate a significant risk that he should have perceived but did not.  *See id.* at 1331 (citation and internal quotation marks omitted).  Thus, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Id.*

Deliberate indifference is established only when the plaintiff demonstrates that the defendant knew of and disregarded an excessive risk to plaintiff's health or safety; in other words, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The official's response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000).

Notably, where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir.1991) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.1989)); *see also Woody v. Cronic*, 401 Fed. Appx. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). Indeed, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033.

Here, however, Plaintiff alleges Defendants failed to provide him with medical treatment. Thus, Long's allegations rise above the level of a simple difference of opinion over the course of medical treatment. Additionally, Long alleges Dr. Hosseini denied him treatment for reasons that are not based in medical judgment. That is, Long alleges Dr. Hosseini refused to allow Long to see the doctor who implanted the hip replacement because "that doctor did not have a contract with FDOC." ECF Doc. 20 at ¶ V.19. Also, Dr. Hosseini "scoffed" at Long's request to see a specialist at Lake Butler Regional Medical Center not for medical reasons but instead because "no specialist would ever treat him if it meant calling out another doctor's error (i.e., Hosseini's diagnoses and refusal to treat Long.)." *Id.* The denial or delay of necessary medical treatment for non-medical reasons can result in

deliberate indifference. *See Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994) (holding that delaying surgery on inmate's hand "for several weeks for a nonmedical reason may violate an inmate's constitutional rights"); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985).

As to Nurse Jones, Long alleges he informed her of his "severe and significant symptoms" through sick call and other requests and that she "had the decision-making authority for issuing [non-narcotic pain relievers]." ECF Doc. 20 at 5-9. Despite repeated requests, and her knowledge of his severe pain, Nurse Jones allegedly failed to prescribe "even non-narcotic pain medications." *Id.* at ¶ V.18. As noted above, failing to treat an inmate's pain can rise to the level of a constitutional violation. *McElligott,* 182 F.3d at 1257. Indeed, the courts have made clear that failure to proscribe pain medication, under certain circumstances, may result in an Eighth Amendment violation. *See, e.g., Benson v. Gordon Cnty., Ga.*, 479 F. App'x 315, 318–19 (11th Cir. 2012) (holding that, when viewed in the light most favorable to plaintiff, allegations that defendant withheld medication for back pain, whether deliberately or as a result of grossly inadequate medical care, were sufficient to state a claim of deliberate indifference to serious medical needs); *Rodriguez v. Unknown Med. Staff at Tallahassee Mem'l Hosp.,* No. 3:16CV253-LC-CJK, 2018 WL 1256486, at *5–6 (N.D. Fla. Feb. 5, 2018), *report and recommendation adopted*, No. 3:16CV253-LC-CJK, 2018 WL 1244150 (N.D. Fla. Mar. 9, 2018) ("plaintiff has alleged sufficient facts to state an Eighth Amendment

claim against Centurion providers based on the alleged failure to provide pain medication and adequate medical care to plaintiff").

Thus, at this stage of the litigation, the undersigned finds that Long's allegations are sufficient to establish that Defendants had subjective knowledge of Long's condition and disregarded the possible harm failing to treat that condition could cause.

### 3. Causation

In Nurse Jones's motion, she also contends Plaintiff has failed to establish the third element as to her conduct, namely, causation. She argues Plaintiff went to sick call and was seen by Dr. Hosseini on August 15, 2017. ECF Doc. 38 at 23.

To satisfy the final element of an Eighth Amendment claim, a plaintiff must allege that the official's deliberate indifference caused his injury. *Burnette*, 221 F.3d at 1258; *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim). Plaintiff has done so here.

Long alleges his pain is severe and constant and is likely to continue. He alleges the implant may be causing further injury if it is defective. ECF Doc. 20 at ¶ V.5. Therefore, if Long's allegations are believed, Nurse Jones's failure to schedule him a follow up visit with a doctor, even for three weeks, and failure to provide him with pain medication, was the cause of his pain and suffering. *See Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994) ("[T]he law was clearly established that several weeks was too long to fail to properly respond to the medical

need. . . . [I]t was clear that deliberate indifference could be inferred from an unexplained delay in treating a known or obvious serious medical condition."). The undersigned finds that Long has met element three of his Eighth Amendment claim as to Nurse Jones.

### D.   Long's allegations, if believed, suffice to show a violation of clearly established law by both Jones and Hosseini

The Defendants also assert that even if Long has successfully alleged a constitution violation, they are entitled to qualified immunity. Although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right"). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.*

The qualified immunity defense shields "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity balances two important public interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to

shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This allows officials to work without fear of liability, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome a qualified immunity defense, a plaintiff must make two showings. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007). First, he "must establish that the defendant violated a constitutional right." *Id.* Second, he must show the violated right was "clearly established." *Id.* For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). There are three ways for a plaintiff to show that the state of the law gives officials fair warning of a clearly established right.

First, a plaintiff can "show that a materially similar case has already been decided." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). In determining whether a right is clearly established under this test, this Court looks to "judicial decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state." *Griffin Indus.*, 496 F.3d at 1199 & n.6. Second, a plaintiff can "also show that a broader, clearly established principle should control the novel facts" of a particular situation.

*Mercado*, 407 F.3d at 1159 (citing *Hope*, 536 U.S. at 741). Third, a plaintiff could show that his case "fits within the exception of conduct which so obviously violates [the] constitution that prior case law is unnecessary." *Mercado*, 407 F.3d at 1159.

As discussed herein, Long's allegations, if believed, show a deliberate indifference to a serious medical need in violation of Long's constitutional rights. The question, therefore, is whether the law concerning the violated right was "clearly established." The cases discussed above show that the conduct alleged by Long, that is - failure to provide him with medical treatment, failure to provide him with pain medication, and failure to provide him with a follow-up visit, have all been clearly established as potential violations of the Eighth Amendment. *See also, Harris,* 21 F.3d at 393 (holding that "it is clearly established that knowledge of the need for medical care and intentional refusal to provide that care constituted deliberate indifference").

Defendants' argument that Plaintiff has not alleged that Defendants failed or refused to provide him with medical care (ECF Doc. 37 at 20, 38 at 26) is simply not supported by the record. Indeed, Plaintiff alleges that Dr. Hosseini failed to refer him to an outside specialist, failed to give him pain medication, failed to give him a medical pass for orthopedic shoes, a hernia cushion and a double mattress. He further alleges that Dr. Hosseini told him to just "deal with the pain." ECF Doc. 20 at 8. And, as stated above, with regard to Nurse Jones, he alleges she failed to give him any pain medications as well. Plaintiff may very well not be able to prove these

allegations, but, at the motion to dismiss stage, he has sufficiently alleged a violation of clearly established constitutional law.

## IV.    Conclusion

Accordingly, it is respectfully RECOMMENDED:

1.    That the motions to dismiss of Defendant Jones (ECF Doc. 38) and Defendant Hosseini (ECF Doc. 37) be DENIED.

2.    That the clerk be directed refer the matter back to the undersigned for further proceedings.

At Pensacola, Florida, this 12th day of December, 2019.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.