UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CURTIS A. LONG,

      Plaintiff,

v.                                 Case No. 5:18-cv-72-TKW-HTC

DR. SEYED HOSSEINI,
NURSE BONNIE JONES,

      Defendants.

_____/

## ORDER and REPORT AND RECOMMENDATION

Curtis A. Long, a prisoner proceeding *pro se* and *in forma pauperis*, filed an amended complaint seeking relief against Defendants for deliberate indifference to a medical need. ECF Doc. 20. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C) and is before the Court on Defendants' motions for summary judgment (ECF Docs. 89 & 90). Upon consideration of the motions, the Plaintiff's response (ECF Doc. 95), the record evidence, relevant law, and for the reasons set forth below, the undersigned recommends the motions for summary judgment be GRANTED.

## I.    BACKGROUND

Long is an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Apalachee Correctional Institution.  He sues two defendants in this action, Dr. Hosseini and Nurse Jones, for deliberate indifference to a medical need under the Eighth Amendment.   The crux of Plaintiff's complaint is that Defendants should have referred him to an outside orthopedic specialist to look at a hip replacement he had years earlier, which he believes is faulty.   Specifically, Plaintiff basis his belief on a recall he read about and pain he was experiencing.  The following allegations are taken from Plaintiff's amended complaint, which was sworn under oath, and thus, is considered as summary judgment evidence:

### A.    Plaintiff's Amended Complaint

Long had a hip replacement in October of 2015.  ECF Doc. 20.  In early 2017, while he was at Apalachee CI, Long experienced "severe pain in his left hip that extended to his back, legs, and knees," *id.* at 5, and had seen advertisements that hip replacements can fail and "lead to metallosis and possible death."  ECF Doc. 91-1 at 64.  Long made frequent attempts to request medical treatment to ease his pain and to determine if the hip replacement had failed.  ECF Doc. 20 at 7-9.

Despite Long's frequent attempts, Dr. Hosseini failed to adequately investigate whether the hip replacement could have been malfunctioning by failing to obtain Long's medical records in a timely manner and by refusing to authorize

Long to be examined by the surgeon who implanted the device or by an outside orthopedic expert.

When Long asked to be seen by an outside doctor, Dr. Hosseini denied the request because the original surgeon did not have a contract with the FDOC and "no specialist would ever treat him if it meant calling out another doctor's error (i.e., Hosseini's diagnoses and refusal to treat Long.)" *Id.* at 8. Thus, Long alleges the basis for the denial was not based on a medical reason. Long also complains that Dr. Hosseini refused to issue Long a medical pass for orthopedic shoes, a hernia cushion, and a double mattress. *Id.*

Long claims that Nurse Jones was deliberately indifferent to his medical needs by "responding 'use sick call' on his numerous requests asking for help with his critical pain issues and refusing to place Long on the doctor's schedule to be examined." ECF Doc. 20 at 9. He also claims "she was negligent for failure to prescribe Long even non-narcotic pain medication (Naproxen or Ibuprofen) to deal with his symptoms" even though "she had the decision-making authority for issuing these drugs." *Id.*

For relief, Plaintiff seeks "an order to permit Long to see an orthopedic specialist to properly diagnose, repair/replace, and treat Long's severe pain caused by his hip replacement" and monetary damages for pain and suffering "in an amount deemed just and fair by this Court." *Id.* at 10.

**B.    Plaintiff's Medical History[1]**

On July 3, 2014, during his arrest, Plaintiff was involved in a car accident, resulting in a left femoral hip fracture wherein he had to undergo several surgeries at Orlando Regional Medical Center ("ORMC."). *See* ECF Doc. 91-1 (Ex. 1, Hosseini's Declaration at ¶¶ 10, 30; Ex. 1a, FDOC Medical Records at CENT_00129-212, 238-243, 249-252); ECF Doc. 91-3 (Ex. 2, FDOC Institutional File at CEN00017, 39); ECF Doc. 91-4 (Ex. 3, Arrest Affidavit.)  Eventually, in October 2015, Plaintiff had a total left hip arthroplasty, or total hip joint replacement. *Id.*

From March 2016 to November 2019 and September 2020 to present, Plaintiff was in FDOC custody.  Upon initial medical intake, the jail records note Plaintiff had "hip pain/chronic pain."  Ex. 1a at CENT_00001-2, 14-21, 34-37.  In March 2016, after submitting a sick call request complaining of sharp pain in his left hip that radiated to his knee and ankle, Plaintiff was examined by a nurse, given Ibuprofen 400 MG, and prescribed a low bunk pass by Dr. Lopez.  Ex. 1a at CENT00039-41.  In April 2016, after submitting a sick-call request complaining of nerve damage from his hip surgery, Plaintiff was examined by a nurse, given Ibuprofen for the pain, and referred to an advanced registered nurse practitioner

---

[1] Plaintiff does not dispute the medical records.

("ARNP") for further evaluation.  The ARNP prescribed Plaintiff a low bunk and no push/pull over 20 pounds passes.  Ex. 1a at CENT_00044-45, 47.

On February 5, 2017, Plaintiff submitted a sick-call request that stated: "I recently saw a recall on hip-replacement equipment that can lead to metaltosis [sic] and possible death.  I do not know what kind of replacement equipment I have.  I need to please find out as soon as possible, I know my doctor's name and hospital, but I don't have contact info."  Ex. 1a at CENT_00052-53.  In response to the request, on February 10, 2017, Plaintiff was seen and examined at sick-call by a nurse.  Ex. 1a at CENT_00053.  At this visit, Plaintiff's vital signs were normal.  However, Plaintiff reported he wanted the information from his previous hip surgery after seeing a recall commercial, and the nurse referred Plaintiff to the doctor for further evaluation.  *Id.*

Consequently, on February 14, 2017, Plaintiff was seen by Dr. Hosseini for the first time.  During the exam, Plaintiff reported he had "heard the kind of prosthesis that they used maybe is recalled, wants to be sure about it."  ECF Doc. 91-1 at CENT_00053.  Dr. Hosseini examined Plaintiff and noted Plaintiff's vital signs were normal, Plaintiff did not appear to be in acute distress or pain, and Plaintiff did not show any signs of infection.  Specifically, Dr. Hosseini wrote: "The site of the operation looks good, without infection."  *Id.*  Dr. Hosseini prescribed for Plaintiff 60 Naproxen 550 MG to be take twice a day as needed, issued passes,

obtained Plaintiff's signature to request his ORMC records; and told Plaintiff to return as needed. *Id.*; ECF Doc. 91-1 at CENT_00053, 107-08.

On April 4, 2017, Plaintiff's ORMC records were received and on April 6 Dr. Hosseini reviewed the records. ECF Doc. 91-1 at 5 ¶ 9; Ex. 1a at CENT_00056.

On July 28, 2017, Plaintiff completed a sick-call request complaining his hip was in severe pain due to hip replacement surgery; he was having hot flashes, dizzy spells, stomach pains, and chest pains since Christmas time; he saw Dr. Hosseini in February regarding the same and signed a consent form for his surgical records, but was never placed on the call out when the records were received; and there may be a recall on his hip replacement equipment.  Ex. 8 at ¶¶ 10-13; Ex. 1a at CENT_00058.

Nurse Jones triaged the request and placed Long to be seen at sick call within seven days.  ECF Doc. 91-9 at 6 (Ex. 8 Jones. Decl. ¶ 12).  A week later, August 4, 2017, Nurse Jones responded to the sick call request and examined Plaintiff.  Ex. 8 at ¶ 13; Ex. 1a at CENT_00058-64.  Ex. 8 at ¶¶ 13-21; Ex. 1a at CENT_00058-63. At this visit, Plaintiff's vitals were normal, and he was not exhibiting any signs he was in pain, or had or was having diarrhea, hot flashes, dizzy spells, stomach pains, or chest pains.  ECF Doc. 91-9 at 7-8 (Ex. 8 Jones. Decl. ¶ 15).  Nonetheless, Nurse Jones issued Long Ibuprofen 400 mg and referred Plaintiff to see the clinician for

his complaints. She also advised him to take acetaminophen as needed for pain, which he could get from the correctional officers. *Id.*

That same day, because Plaintiff complained of chest pain, Nurse Jones notified the clinician on duty, Dr. Hosseini. Ex. 8 at ¶ 15; Ex. 1a at CENT_00059-64. Dr. Hosseini ordered and administered nitroglycerin (which is used to treat symptoms of acute chest pain) and an Electrocardiography ("EKG.") *Id.*; Ex. 1 at ¶¶ 14-15. That same day while Plaintiff was still in sick-call, Dr. Hosseini reviewed the EKG results and determined no further testing or investigation was required. *Id.* Nurse Jones provided Plaintiff medication for his complaints — including Ibuprofen, Loperimide, and Pepto-Bismol – and referred Plaintiff to the clinician for further evaluation. Ex. 8 at ¶ 19; Ex. 1a at CENT_00058-64. This August 4 examination was the first and only time Nurse Jones treated Plaintiff.

On August 15, 2017, Dr. Hosseini saw Plaintiff in follow up to his August 4th sick-call visit with Nurse Jones; prescribed Ibuprofen 600 for another three months; issued passes for "low bunk, 0 pushing, 0 lifting, 0 prolong standing" and for having metal in the body; issued insoles for shoes and related pass; and requested x-rays. Ex. 1 at ¶¶ 14-16; ECF Doc. 91-1 at CENT_0054 (examination notes)[2] & 107-08 (prescriptions).

---

[2] In his declaration, Dr. Hosseini states he examined Plaintiff on March 15, 2017. ECF Doc. 91-1 at 5. Defendants' motion references ECF Doc. 91-1 at CENT_00054, as showing an examination occurred on March 15. However, a careful review of that exhibit shows the date of the examination

On August 29, 2017, the x-rays results were available, and on September 1, Plaintiff was seen by Dr. Hosseini to review the results. Ex. 1 at ¶¶ 17-18; Ex. 1a at CENT_00065-68. The x-rays, as interpreted by Dr. Mary Pliskin of Schryver Medical, LLC, and signed by Dr. Sean Johnston, revealed no evidence of a fracture or misalignment. *Id*. After examining Plaintiff, Dr. Hosseini determined Plaintiff was exhibiting no signs of infection or indicia requiring further diagnostic testing (i.e. orthopedic consult, blood test, CT scan, MRI, ultra-scan), and recommended he continue the same course of treatment. *Id*. Dr. Hosseini also prescribed a donut cushion for Plaintiff. *Id*. Hosseini did not see Plaintiff again.

On June 18, 2018, Plaintiff submitted a sick-call request, requesting copies of his x-rays and medical records. Ex. 1a at CENT_00072. Plaintiff also complained he had severe aches and pains in his left leg and lower back that are sometimes sharp and stabbing. *Id*. In response, Plaintiff was seen by a nurse who noted that Plaintiff's gait and vital signs were normal and there was no swelling or discoloration in his hip; gave Plaintiff Ibuprofen 200 MG; and referred Plaintiff to the provider for a possible prescription for Ibuprofen 600. Ex. 1a at CENT_00073-74. That same day, Plaintiff's medical chart was given to Dr. Hosseini who, after reviewing the chart,

---

was actually 8/15/17. While the handwritten date makes the "8" look like a "3", the Doctor's Clinic stamp clearly identifies the date as occurring in August.

prescribed Ibuprofen 600. Ex. 1 at ¶ 20; Ex. 1a at CENT_00069, 73-74, 107-08. Dr. Hosseini had no further involvement in Plaintiff's medical care after this date.

On February 20, 2019, Plaintiff submitted a sick-call request, requesting pass renewal, his medical records, and a blood test. Ex. 1a at CENT_00076. In response, on February 25, 2019, a licensed practical nurse ("LPN") saw Plaintiff in sick-call. Ex. 1a at CENT_00077-78. The LPN noted Plaintiff's vitals were normal, his skin tone in the left joint hip area was normal, there was no reddening or red streaks extending from the alleged affected area, it was not warm to the touch, there was no swelling, and recommended acetaminophen for the pain. Ex. 1a at CENT_00077.

The following day, Plaintiff was examined by a nurse practitioner. Ex. 1a at CENT_00079. Plaintiff's primary complaint was that he was having pain on his left hip, he was told that the metal in his hip was on recall, and he needed his Ibuprofen refilled. *Id*. The nurse practitioner observed Plaintiff ambulate with no difficulty and without assistance and had no signs of infection. She ordered an x-ray; prescribed Ibuprofen 600 MG; and renewed his low bunk pass. Ex. 1a at CENT_00079, 107-08. She further noted an orthopedic consult referral would be dependent on the x-ray results. Ex. 1a at CENT_00079, 84, 80, 83.

On May 8, 2019, the nurse practitioner went over the x-ray results (which showed that his arthroplasty was still intact) with Plaintiff and determined no orthopedic follow up was necessary. Ex. 1a at CENT_00085. During this same

visit, Plaintiff denied fever or pain but did verbalize he sometimes gets discomfort in his left hip. The nurse practitioner noted Plaintiff's vitals were normal, he was exhibiting no signs of infection or fever and recommended he continue his Ibuprofen prescription as ordered. *Id*.

Relevant to his worries about suffering from metallosis from a defective implant, Plaintiff got his blood tested on March 2, 2016; April 6, 2016; May 13, 2019; December 18, 2019; and September 16, 2020. Ex. 1a at CENT_00037, 46, 88-89, 91, 101-103, 333-337. At no point did these tests show abnormalities indicative of metallosis; however, they did show abnormalities indicative of Hepatitis C. Ex. 1 at ¶ 24; Ex. 1a at CENT_00091,101-103. On Plaintiff's FDOC annual Tuberculosis Symptoms Questionnaire — completed March 28, 2017; April 2, 2018; and April 1, 2019 – Plaintiff denied experiencing night sweats, low grade fever, loss of appetite, loss of energy level, chest pain, shortness of breath, loss of weight without trying, or decreased energy levels in the six weeks prior to the assessment. Ex. 1 at ¶ 25; Ex. 1a at CENT_00055, 69-71, 81-82.

During Plaintiff's initial medical screening on November 18, 2019, at Brevard County Detention Center ("BCDC"), it was noted that Plaintiff did not have visible signs of serious injury, bleeding, alteration in consciousness, respiratory distress, extreme pain distress, chest tightness, psychosis, or other symptoms requiring emergency medical treatment. Ex. 1b at CENT_00292-312, 643-683. It

was also specifically noted that his appearance was unremarkable, state of consciousness was alert and oriented, ease of movement was unremarkable, breathing was comfortable, vital signs were normal, and he did not have severe headache, shortness of breath, fever/chills, nausea, vomiting, or diarrhea.  *Id*.

At BCDC, the providers observed no swelling, discoloration, fever, or other signs indicative of infection.  *Id*.  At no point during his stay at BCDC, which was from November 2019 to September 2020, did a health care provider deem it medically necessary to either refer Plaintiff to an orthopedic specialist or to order additional diagnostic tests.  *Id*.  Rather, the health care providers prescribed Ibuprofen/Aleve for Plaintiff's complaints of pain and recommended an X-ray, which Plaintiff refused.  *Id*.

## II.    SUMMARY JUDGMENT STANDARD

To prevail on a motion for summary judgment, a defendant must show that the plaintiff has no evidence to support his case or present affirmative evidence that plaintiff will be unable to prove his case at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If a defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

## III.    DEFENDANTS' MOTION

In their motions for summary judgment, Defendants make the following arguments: (1) Long's injunctive relief claim against Hosseini is moot, fails to show irreparable harm and lack of an adequate remedy at law, and would seek relief against entities not party to this suit; (2) Long has not shown show he suffered more than *de minimis* injury; (3) Long fails to state a constitutional violation because he cannot show he suffered an objectively serious medical need of which Dr. Hosseini or Nurse Jones was aware and to which either failed to adequately respond; and (4) Defendants are entitled to qualified immunity.  ECF Docs. 89 & 90.

In support of their motions, Defendants rely upon the declaration of Dr. Hosseini; the Plaintiff's medical records; FDA Medical Device Recall information; Plaintiff's FDOC file and arrest affidavit; brochures from the producer of the hip device; Plaintiff's inmate grievances; and the declaration of the FDOC medical records custodian, Bonnie Jones.  *See* ECF Doc. 91.

Plaintiff has filed a written opposition to the motions, attaching to the response various medical records, information regarding recall of a hip replacement, and

emails from family members.[3]  Plaintiff also submitted a declaration affirming the factual assertions in his written response are true and correct.  ECF Doc. 95 at 9. Plaintiff does not dispute the accuracy of his medical records or the authenticity of the documents submitted and relied upon by Defendants

Additionally, Plaintiff filed a "Motion to Take Judicial Notice," ECF Doc. 98, in which he asks the Court to take notice of facts from other cases involving Dr. Hosseini or Nurse Long.  Defendants filed a written opposition to the motion.  ECF Doc. 100.  Upon consideration, the motion is DENIED.

The Court does not take judicial notice of legal authority; nor does it take judicial notice of facts which are subject to dispute.  Fed. R. Evid. 201.  However, the Court will consider Plaintiff's motion as a notice of supplemental authority under Local Rule 7.1(J).

After careful consideration of the undisputed facts and the relevant law, the undersigned finds Plaintiff has failed to present evidence to support his deliberate indifference claim as to either Defendant.  Based on this determination, the undersigned finds Plaintiff is not entitled to injunctive or other relief, and also finds it unnecessary to address Defendants' qualified immunity or lack of a more than *de*

---

[3] Although Plaintiff submitted a written opposition as to the merits of the Defendants' motions, he also argued the motions were premature because he is entitled to additional discovery based on a then pending motion to compel.  The undersigned, however, denied Plaintiff's motion to compel as both untimely and also without merit.  ECF Doc. 99.  Thus, the undersigned finds Plaintiff has not met his burden under Federal Rule of Civil Procedure 56(d) of providing "specified reasons [he] cannot present facts essential to justify [his] opposition."  Fed. R. Civ. P. 56(d)

*minimis* physical injury arguments.[4]  Also, because Defendants' arguments in the two motions overlap, the undersigned addresses both motions herein.

## IV.    EIGHTH AMENDMENT - DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Estelle,* 429 U.S. at 105; *Mandel v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989).  Rather, medical treatment violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Mandel,* 888 F.2d at 787–88 (mere negligence or medical malpractice is "not sufficient" to constitute deliberate

---

[4] *See Dalrymple v. Reno*, 334 F.3d 991, 997 (11th Cir. 2003) ("Because we find no constitutional violation ..., we need not address whether the constitutional rights at issue were clearly established.").  Also, see section IV.B. discussing lack of evidence of an injury.

indifference); *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989) (mere medical malpractice does not constitute deliberate indifference).

To prevail on a claim of deliberate indifference to a serious medical need, Plaintiff must present evidence to establish the following: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d at 1291, 1306-07 (11th Cir. 2009) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann,* 588 F.3d at 1307. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. *Id.* In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* (citing *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003)).

Viewing the allegations in the light most favorable to Long, the undersigned accepts for purpose of the motions for summary judgment that Plaintiff's diagnosis

of chronic hip pain constitutes a serious medical need.[5]  Thus, the undersigned will focus on the second and third elements:  deliberate indifference and causation.

### A.    Deliberate Indifference

To establish the second element of his claim, Plaintiff must show Defendants both knew of *and* disregarded an excessive risk to his health or safety.  Plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence."  *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  *Id.*

Establishing deliberate indifference also requires Plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish."  *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir.

---

[5] The undersigned notes, however, that this issue is short from being settled.  *Compare e.g., Monteleone v. Corizon,* 686 F. App'x 655, 660 (11th Cir. 2017) (recognizing the seriousness of chronic back pain but ruling "the record does not support a finding that the two-and-a-half week delay here was enough to establish a constitutional violation because Mr. Monteleone has not provided evidence demonstrating that if left unattended, his back pain "pose[d] a substantial risk of serious harm"); *Kershaw v. S. Corr. Med.,* 2019 WL 6337440 at *4 (M.D. Ga. Oct. 28, 2019, *report and recommendation adopted sub nom., Kershaw v. White,* 2019 WL 6329340 (M.D. Ga. Nov. 26, 2019) (finding plaintiff's subjective complaints of pain, supported only by a prior hip surgery and prior pain medication prescription does not constitution a serious medical need).

2000).  Thus, Defendants' response to Plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice."  *Id.* at 1258 (citing *Estelle,* 429 U.S. at 105–06).

Plaintiff, however, has presented no evidence to show Defendants were deliberately indifferent to that need.  To the contrary, the medical evidence shows that both Dr. Hosseini and Nurse Long prescribed various treatments for Long to address the pain.  Moreover, the fact that Defendants did not refer Long to an outside orthopedic specialist to look at his hip replacement does not rise to the level of deliberate indifference.  At best, it is a dispute over treatment.  There is no evidence Plaintiff had a faulty hip replacement, was suffering from an infection, or required additional treatment.  Instead, Plaintiff's belief that his hip replacement was faulty because *other* replacements had been recalled is purely speculative and is not supported by the undisputed evidence.

Plaintiff admits, and the record reflects, he received extensive examination and medical treatment in this case both before and after he was treated by Defendants.  As set forth in the medical summary above, Dr. Hosseini either examined Plaintiff or reviewed his medical records for purposes of treating him at least seven (7) times between February 2017 and June 2018.  During those visits, Dr. Hosseini did not ignore Plaintiff's complaints of pain or his subjective concern

regarding a faulty hip replacement.   Instead, he prescribed pain medication, instructed him to return as needed, issued passes for him, and ordered x-rays.[6]

Likewise, the only time Nurse Jones saw Plaintiff she issued Ibuprofen 400 mg to him and referred him to a clinician.   She also advised him to take acetaminophen as needed for pain, which he could get from correctional officers. Additionally, she administered over the counter mediation for his upset stomach.

Thus, Plaintiff's allegations that Nurse Jones "was negligent for failing to prescribe Long even non-narcotic pain medication" and "refus[ed] to place Long on the doctor's schedule to be examined," are simply belied by the uncontradicted medical records.   *See Johns v. Chatman*, 2017 WL 3767793, at *9 (M.D. Ga. May 18, 2017), *report and recommendation adopted sub nom., Johns v. Johnson*, 2017 WL 3758826 (M.D. Ga. Aug. 30, 2017) ("After those two months, Plaintiff argues he was not given any other medications until he filed this present lawsuit.  This contention is not supported by substantial evidence and Plaintiff's medical history is full of indications that Dr. Sachdeva prescribed and administered medications to Plaintiff.").

This is not a case where Plaintiff did not receive any treatment, where Defendants delayed or avoided treatment to save money or where Defendants chose

---

[6] Dr. Hosseini also responded to Plaintiff's complaints of chest pain by ordering and administering nitroglycerin, an EKG, prescribing medication, and referring him to a clinician for further evaluation. Ex. 8 at ¶ 19; Ex. 1a at CENT_00058-64.

an easier treatment plan. Indeed, Plaintiff does not dispute he received treatment. Instead, Plaintiff disputes the treatment was sufficient. Plaintiff's own judgment, however, that he needs a referral to an outside orthopedic doctor or that his hip replacement was faulty does not establish a claim of deliberate indifference.

In cases where an inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir.1991) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.1989)); *see also Woody v. Cronic*, 401 Fed. Appx. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). In short, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033.

At the motion to dismiss stage, the Court declined to dismiss the case because Long's allegation that Dr. Hosseini denied him treatment for reasons that are not based in medical judgment, was sufficient to state a cause of action. ECF Doc. 48 at 18-19. Now, however, at the summary judgment stage, the question for the Court is not whether the allegations, if believed, establish a claim, but whether a reasonable jury could find for Plaintiff based on the facts and evidence presented. Here,

Plaintiff's allegations are merely conclusory; there is nothing in the record indicating that Defendants did anything other than prescribe treatment they felt was appropriate based on their medical judgment. *See Hall v. Moore*, No. 3:14CV140/MCR/CJK, 2015 WL 9946410 (N.D. Fla. Dec. 29, 2015), *report and recommendation adopted,* No. 3:14CV140/MCR/CJK, 2016 WL 394012 (N.D. Fla. Feb. 1, 2016) (when considering a motion for summary judgment, a court may not "accept any facts that are 'blatantly contradicted by the record, so that no reasonable jury could believe [them]'") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Notably, none of the medical professionals who examined Plaintiff *after* Dr. Hosseini recommended other or additional treatment.

Thus, the undersigned finds, based on the evidence presented, no reasonable jury could find Defendants' actions constitute deliberate indifference. *See, e.g., Cole v. Patrick*, 2019 WL 4732520, at *13 (N.D. Ala. Aug. 13, 2019), *report and recommendation adopted*, 2019 WL 4689176 (N.D. Ala. Sept. 26, 2019) ("The undisputed medical record shows that Robbins, Melendez, Poursaied, and Stevens routinely examined the plaintiff, prescribed him pain medication, and requested diagnostic procedures in response to the plaintiff's complaints of pain. Additionally, Robbins obtained the plaintiff's medical records from other facilities; ordered lab testing before concluding that he suffered from osteoarthritis, not from rheumatoid arthritis, as he insisted; and treated him accordingly. The medical record is devoid

of evidence that these defendants had subjective knowledge of and disregarded a risk of serious harm to the plaintiff due to his chronic pain. To the contrary, the record establishes that the defendants regularly examined the plaintiff and treated him.").

Even assuming, *arguendo*, Defendants were incorrect in their determinations regarding Plaintiff's medical treatment – namely, that other forms of treatment were appropriate to treat Plaintiff's needs – their conduct was not "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" as necessary to establish a constitutional violation. *See Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). Plaintiff's claim constitutes a disagreement with the type of care Defendants provided and does not support a claim under the Eighth Amendment. *See e.g., Dykeman v. Ahsan*, 560 F. App'x 129, 131 (3d Cir. 2014) (affirming district court's dismissal of claims that Defendants failed to properly treat Plaintiff's hip pain when they did not perform an MRI or refer him to an orthopedic specialist).

### B.    Plaintiff Has Presented No Evidence of an Injury

Finally, Plaintiff has not satisfied the third element of his deliberate indifference claim because Plaintiff has not shown any conduct by the Defendants caused an injury or exacerbated an injury. *See LaMarca v. Turner,* 995 F.2d 1526, 1538 (11th Cir. 1993) (finding that, to establish causation, a plaintiff must prove that

defendants' acts or omissions "were the cause – not merely a contributing factor – of the constitutionally infirm condition").

As discussed above, no medical professional has diagnosed Plaintiff with a faulty hip replacement or an infection.  His x-rays and test results do not support the existence of those conditions.  Moreover, even after his treatment by Defendants, no other medical professional has determined Plaintiff to be in needed of any other or different medical treatment for his hip.  In other words, Plaintiff had chronic hip pain before he was treated by Defendants, and he has presented no evidence from which a reasonable jury could conclude that Defendants' conduct made that condition worse.

Accordingly, it is ORDERED:

1.    The Motion to Take Judicial Notice (ECF Doc. 98) is DENIED.

Additionally, it is respectfully RECOMMENDED:

1.    That the motions for summary judgment, ECF Docs. 89 and 90, be GRANTED and judgment be entered in favor of Defendants on all of Plaintiff's claims.

2.    That the clerk be directed to close the file.

DONE at Pensacola, Florida, this 16th day of February, 2021.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.** An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.